CHEHARDY, Chief Judge.
The State brought this action to terminate the parental rights of David D. with respect to his three children, Janice D., Jennifer D., and David, Jr. The two girls are the children of his wife. He adopted the girls and the boy is his own child, born of that marriage.
The Juvenile Court for the Parish of Jefferson rendered judgment terminating the father’s rights to all three children.
The father appeals, raising the following issues:
(1) The trial court erred in applying Act 400 of 1985 retroactively.
(2) The State failed to meet its burden of proof.
Testimony at the trial was given by the father and Judith Knupple, the Family Service worker of the Office of Human Development.
The father testified he was charged with aggravated rape of Janice and six counts of rape against Jennifer. In connection with these charges he pleaded nolo contendré to one count of forcible rape on each daughter. He was sentenced to 40 years on each count.
During the time these incidents of sexual abuse occurred, the minor son was residing in the home. He was not involved. How *1197 ever, the father videotaped the proceedings and the son walked in the room during some of the occurrences, but the father chased him out. The father did not recall how many times this happened. The boy is slightly over three years old.
Mrs. Knupple testified that in her view and that of her department the best interest of these children would be served by having their father’s rights terminated.
In arriving at this conclusion, the department was aware that the sexual abuse of the girls had been going on since they were 10 and 12 years old. (At the time of trial, January 1986, they were 16 and 17 years old, respectively.) Both of the girls had had abortions. The pictures explicitly depicted the sexual activities of the father with the girls. He is 52 years old.
Dr. Edward Schwery’s comprehensive 34-page psychological report of the children and the mother was given careful consideration and taken into account when the children were declared in need of care.
The court noted Dr. Schwery found tremendous emotional damage had been done to the children. The report of Dr. Schwery was introduced in evidence as a joint exhibit. The doctor completed his examination of David, Jr., and Sr., and had examined the two girls and the mother in depth, but had not completed his formal examination. He had, however, obtained sufficient information to submit this detailed report.
While formal examination was unfolding, treatment, which was desperately needed without delay, was begun with the girls. The mother was resistant and minimally cooperative. Dr. Schwery found the graphic and explicit videotape of extensive abuse of the children was remarkable in the portrayal of the massive psychological damage done to the girls. The mother was aware of the abuse, but verbally abused and blamed the girls for the sexual involvement.
In over 15 years in which Dr. Schwery has been involved in child abuse cases he has treated more than 1,500 children who have been sexually abused by an adult, and he found these children among the most severely damaged he has ever seen. The clinical issues are enormously complicated.
While appellant wants his parental rights restored to all three children, he particularly objects to termination of those rights to his son. He relies on Dr. Schwery’s report which shows that the son has no mental disorder, and claims that the State has not proved that the son has been subject to mental, physical or sexual abuse. In reviewing the report as to “Sonny” (David, Jr.), we note the child was two years, eight months old at the time of the examination (June 20, 1985) by Dr. Schwery. The boy was physically well nourished and normal in development.
Prior to the examination, the mother reported to Dr. Schwery that she and a neighbor had observed Sonny simulating sexual intercourse with a doll. The adults became alarmed that the child was manifesting the effects of sexual abuse of his sisters and concluded he had probably witnessed contact between his father and the sisters. The doctor found the child’s social and personality development a bit delayed, possibly as a result of stress or general emotional conflict in the family.
During subsequent contact with Sonny and his mother there were no further instances of sexual behavior by the child and his prior mimicking of sexually mounting a doll and a pet dog had disappeared.
With preschool children where sexual abuse is suspected, removal from the situation and promotion of repression of memories is the treatment of choice, according to Dr. Schwery. The doctor found the boy had no mental disorder.
At Dr. Schwery’s interview with David, Sr., the father graphically indicated his sexual involvement with the daughters, introducing nudity into the family and attempting to justify his sexual involvement as a means to promote healthier development of the girls.
The doctor found the defensive posture, intellectualizations and rationalizations manifested by the father as classic for *1198 child molesters who masquerade as incest perpetrators. It was Schwery’s opinion that the father’s primary motivation for courtship and marriage to the mother was for access to the two girls. The father acknowledged prior psychiatric history when he was hospitalized in 1971 for five weeks.
Dr. Schwery found the father’s extensive use of characters and logical defenses had eroded the quality of his thinking abilities, which is consistent with severe character disorders.
He found the father to be an angry but markedly immature and self-centered individual who has not developed appropriate methods of expressing anger in a modulated and timely fashion, and that research with such individuals indicates a common pattern of marital disharmony, sexual maladjustment, promiscuity, divorce and alcoholism. The father’s basic personality structure is similar to that of his wife. The doctor felt the potential for violent and aggressive behavior should not be underestimated. He concluded there was no likelihood of any capacity for reformation or development of skills commensurate with competent parenting and that the likelihood of this man benefiting from professional treatment was almost nonexistent.
Relative to appellant’s first contention, prior to July 1985 LSA-R.S. 13:1601 in pertinent part read as follows:
“The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court’s jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section * * *.
“A. (1) The abuse or neglect of the child by the parent or parents results from a crime committed against the person of the child or when a parent is an accessory to such a crime.”
In the 1985 session, the legislature amended R.S. 13:1601(A)(1) as follows:
“The abuse or neglect of the child by the parent or parents resulting from a crime committed against the person of the child or a crime committed against another child of the parent or parents or when a parent is an accessory to such a crime committed against the person of the child or another child of the parent or parents. ” (Emphasis ours.)
It is appellant’s contention that prior to the 1985 amendment his parental rights as to Sonny could not have been terminated since he did not commit an offense against that child.
The old law, it is claimed, only provided for the termination of parental rights to the child who was a victim himself, but not of siblings of child victims. The amendment broadens the definition and/or conditions for the termination of parental rights that previously had not been provided for.
Appellant claims the 1985 change affects substantive rights of parents and does not contain language expressly indicative of legislative intent to make it retroactive. Furthermore, appellant contends the revised act does not apply because the crimes occurred before the passage of the 1985 act.
We find it unnecessary to discuss this contention because in our view the father’s abuse and neglect of the boy himself was apparent before the act was amended. To permit the little boy to roam at will through the house and into a room where his father was videotaping his sexual activities with the sisters certainly triggered the child’s simulating sexual activities with a doll and a dog.
The conduct of the father clearly constituted abuse and neglect of the minor son at the time the child was privy to such obscene conduct, causing the child to attempt to reenact the activity with a pet animal and an inanimate object. There is no merit to appellant’s contention that the State has failed to meet its burden of proof. Appellant claims the State introduced evidence proving appellant committed crimes against *1199 his daughters prior to but not after Act 400 of the 1985 regular session and that there is no evidence appellant committed any crime against Sonny at any time.
As we have discussed the father’s conduct above, and the results such conduct had upon the daughters and the son, we conclude the State has proved beyond a reasonable doubt and by clear and convine-ing evidence that the father abused all of the children and the trial court judgment is correct.
For the reasons assigned the judgment appealed from is affirmed.
SENTENCE AFFIRMED.